UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| GRACE G. SIMMS, | ) | Civil Action No.:   3:17-cv-201 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | *Plaintiff's Complaint* |
| | ) | |
| THE PENNSYLVANIA STATE | ) | |
| UNIVERSITY – ALTOONA, | ) | |
| DR. L. JAY BURLINGAME, and | ) | **Electronically Filed** |
| DR. ROBERT L. MATCHOCK, | ) | |
| | ) | |
| Defendants. | ) | **JURY TRIAL DEMANDED** |

**COMPLAINT**

AND NOW, comes the Plaintiff, Grace G. Simms, by and through her undersigned counsel and the law firm of DODARO, MATTA & CAMBEST, PC., and files the instant Complaint in civil action, and in support thereof, avers as follows:

I.     **INTRODUCTION**

1.     Plaintiff brings this action to seek relief for violations of her constitutional rights and statutory protections. Plaintiff asserts claims to seek redress for the deprivation of her substantive and procedural due process rights guaranteed by the Fourteenth Amendment. Plaintiff asserts additional pendent state law claims for breach of contract. Plaintiff brings this action pursuant to 42 U.S.C. §§ 1983, and 1988 for relief through compensatory damages, injunctive relief and attorney's fees stemming from Defendants' violations of Plaintiff's rights.

2.     As described herein, Grace Simms – a victim of ongoing and uninvestigated – harassment by her classmate and was subject to an arbitrary and irrational disciplinary decision by the Altoona Campus of the Pennsylvania State University in a manner that denied her due process. As set forth in the paragraphs that follow, Miss Simms was falsely charge with criminal offenses

under the Pennsylvania Crimes Code and later disciplined under the University's Code of Conduct. As a result of the action of the University, Miss Simms was forced to simultaneously defend herself in front of the University's Conduct Board and in criminal court. In short, the University violated Miss Simms' right to due process by implementing a failed policy that denied her the right to council when its rules prevented her attorney from actively participating in the Conduct Board Hearing so as to protect her Fifth Amendment Rights.

3.     Miss Simms was forced to testify at the hearing even though any statement she made was adverse evidence in her criminal proceeding. Despite Miss Simms having been victimized by her peer and falsely charged by the police, she trusted the University to absolve her of any alleged conduct violations. However, when confronted with overwhelming evidence that confirmed Miss Simms' innocence, the Conduct Board made an arbitrary and irrational decision when they suspended her from the University.

## II.     **JURISDICTION AND VENUE**

4.     This action is brought pursuant to 42 U.S.C. §1983, 42 U.S.C. §1981, Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000d *et seq.* and the Fourteenth Amendment of the United States Constitution.  This Court has jurisdiction over Plaintiffs' claims under 28 U.S.C. §1331 (federal question) and under 28 U.S.C. §1343(3) (civil rights).  The Court has jurisdiction over Plaintiff's supplemental state law claims under 28 U.S.C. §1367 (supplemental jurisdiction) as those claims form part of the same case or controversy under Article III of the United States Constitution.

5.     Plaintiff invokes the supplemental jurisdiction of this Court to hear and decide claims arising under state law.  All of the events alleged herein occurred within the Commonwealth of Pennsylvania.

6.      Venue is found pursuant to 28 U.S.C. §1391(b) and is proper as all claims set forth herein arose in Blair County Pennsylvania within the Western District.

7.      Plaintiff Simms is a resident of the State of New York and the Pennsylvania State University are residents of Pennsylvania.  The amount in controversy exceeds $75,000.00.

### III.   PARTIES

8.      Plaintiff Grace G. Simms ("Miss Simms") is an adult individual and resident of the State of New York.  At all times relevant to this action, she was a college student enrolled at Penn State Altoona.

9.      Defendant Penn State Altoona is a branch campus of The Pennsylvania State University ("University"), and is located in Altoona, Blair County, Pennsylvania.   The Pennsylvania State University ("Penn State") is a state-related university operating and existing under the laws of Pennsylvania and is an instrumentality of the Commonwealth.[1]  Penn State Altoona's officers and employees are state actors.

10.     Defendant Dr. L. Jay Burlingame ("Burlingame") is an adult individual and the "Associate Director" for the Division of Student Affairs and the Director for the Office of Student Conduct and, as such, oversees the student disciplinary process at Penn State Altoona.

11.     Defendant Dr. Robert L. Matchock ("Matchock") is an adult individual and served, at times relevant to this action, as the "Hearing Chairperson" who conducted the student discipline proceedings relating to Ms. Simms.

---

1.      *See*, *e.g.*, Pennsylvania Fair Educational Opportunities Act, Act of July 17, 1961, P.L. 776, as amended, 24 P.S. Section 5009, in which the Legislature defined Penn State and its branch campuses as one of four state-related universities.

## IV.   FACTS

12.    Miss Simms is a member of a protected group based on her Race (African American), Color (black), and sex (female) and she was the victim of student harassment and University discrimination. At times relevant to this action, Miss Simms was enrolled in the Pennsylvania State University at its Altoona Campus.

13.    Beginning in March 2016, Miss Simms was the subject of a cyber bullying campaign by one of her peers, Sarah Ismail. Throughout the events giving rise to this cause of action, Miss Simms felt threatened by Ismail's actions towards her, which consisted of threatening messages and posts.

14.    At approximately 7:30 p.m. on or about March 29, 2016, Ismail banged on the door of Miss Simms' residence and began recording her for a "Snapchat story," a social medial platform.

15.    Ismail proceeded to loudly harass Miss Simms for nearly ten minutes and continued to bully her through social media. Miss Simms felt extremely humiliated and the incident left her with negative thoughts about herself.

16.    Ismail's conduct was so outrageous and disruptive, that neighbors of Miss Simms were compelled to check on her wellbeing. Miss Simms was concerned about the events and called her parents for advice, and they counselled her to contact the police if it were to happen again.

17.    Later in the evening of March 29, Miss Simms went to the library as part of her normal study routine. Upon arrival, she encountered Alexis Lott who conveyed to Miss Simms that Ismail was in the library. Miss Simms took this as an opportunity to politely ask Ismail to delete the embarrassing videos.

18.     Miss Simms stated to Ismail: "Sarah I would appreciate if you would please delete the videos of me from you snapchat account and if you have an issue with me I would respectfully try to resolve the issue." Ismail appeared to be under the influence and responded to Miss Simms by aggressively yelling and cursing at her.

19.     Ismail's disruptive behavior drew the attention of other students in the library and Erica Marbury, another student entered the room in order to calm her down. Ismail responded stating, "What the fuck do you have to do with this?" Ismail then spit on and began attacking Marbury, which was a complete shock to Miss Simms.

20.     At no point during the incident was Miss Simms ever the aggressor towards Ismail or Marbury. Miss Simms' only role in the altercation between the two was to prevent them from fighting. In fact, after the event, Marbury stated that she needed to call the police to report Ismail's attack on her. Miss Simms stayed with Marbury and reported all of Ismail's conduct preceding the incident at the library to the police, who stated that they would document her complaint.

21.     A few days later, Miss Simms was told that she was going to face disciplinary and criminal charges, even though she was the victim of harassment and cyber bullying by Ismail actions.

22.     Despite an obligation to pursue criminal and disciplinary sanctions against Ismail, the University began conducting an investigation of the incident pursuant to the Code of Conduct and Student Conduct Procedures. As part of the investigation, Miss Simms and Marbury reported to the police that Miss Simms was never the aggressor and that Ismail provoked the entire incident in the study room by spitting on Marbury and that Simms was a victim of harassment.

23.     The criminal reports show that any physical contact towards Ismail resulted from the actions of Marbury and not Miss Simms and only occurred after Ismail's belligerent actions towards Marbury.

24.     As the facts would show, Miss Simms' only involvement in the entire series of events was to seek Ismail's cooperation in removing embarrassing social media posts and to stop the altercation between Ismail and Marbury.

25.     Subsequently, on or about April 7, 2016, University Police charged Miss Simms with three criminal charges under the Pennsylvania Crimes Code, names a grade-two misdemeanor for "Simple Assault," a grade-three misdemeanor for "Conspiracy-Disorderly Conduct" and a summary offense for "Harassment." Each of the charges subjected Miss Simms to potential imprisonment.

26.     Simultaneously, the Office of Student Conduct charged Miss Simms with violations of the Student Conduct Policy with one count each of "Harming or Attempting to Harm Self of Another (major level violation)" and "Harassment—Other (major violation)."

27.     The Office of Student Conduct notified Miss Simms of a University Conduct Board hearing scheduled for May 19, 2016. The notification provided that Miss Simms had the following rights: (1) the right to be informed in writing of all charges at least five business days before a hearing; (2) the right to waive the five day notice and proceed with a hearing after receiving charges; (3) the right to question witnesses who appear in person or by telephone at any hearing; (4) the right to review available evidence and documentation prior to a hearing; (5) the right to appeal the hearing decision if assigned a disciplinary suspension or expulsion; and (6) the right to a hearing report of the hearing, including findings and sanctions.

28.     Comprising the Conduct Board was the Chancellor and Dean of the campus, two faculty advisors and a student advisor. All of these individuals were Caucasian in race and white in color.

29.     Once the proceedings began, member conduct caused Miss Simms to feel as if the Board had already made a predetermined decision to suspend her and she believed they did so because she was African-American.

30.     Right from the start of the hearing, the Board was overly dismissive of Miss Simms' position, as evidenced by their body language, and questioning of Miss Simms and her witnesses. From the moment Miss Simms entered the hearing room, she was treated by the Board in a disrespectful and dismissive matter.

31.     Pursuant to the University Code of Conduct and Student Procedures, Miss Simms had the opportunity to be assisted by an attorney in preparation of defending herself against the Conduct charges, but her attorney was not allowed to actively participate in the hearing itself.

32.     Due to the fact that there was an ongoing criminal proceeding regarding the events of which Miss Simms was charged under the conduct policy, her Fifth Amendment rights were implicated because any testimony that she provided during the Conduct Board Hearing could be used against her during any criminal proceeding.

33.     Without the active participation of an attorney or advisor at the hearing, Miss Simms faced a troubling decision. Miss Simms could attempt to avoid suspension by testifying to the events as she witnessed them and jeopardize her criminal case, or she could remain silent and allow the Conduct Board to hear virtually uncontroverted evidence.

34.     Because Miss Simms valued the opportunity to pursue her education, she reluctantly chose to confront the charges of the Conduct Board without her attorney being able to

participate, in the face her right as to not self-incriminating herself by offering evidence that may later be presented in a criminal proceeding.

35.     Miss Simms trusted that the Board would review the evidence and make a reasoned decision consistent with her testimony and the reports, all showing that she was never the aggressor towards Ismail and that she was the victim of harassment and bullying.

36.     As part of the procedures of the disciplinary proceedings, the Hearing Board is to consider all of the evidence presented and make a determination whether a student has violated each section of the Code of Conduct with which the student is charged. Such a determination shall be made using a preponderance of the evidence standard.

37.     Even when presented with overwhelming evidence that shows that Miss Simms was innocent of the Conduct Policy charges that she faced, the Hearing Board made a unanimous determination that she was responsible for the charges against her.

38.     As a result, Miss Simms was suspended through the Spring 2017 semester, required to pay Ismail's "out-of-pocket" expenses, and had to attend counseling prior to re-enrollment.

39.     The decision of the Hearing Board Stated in part:

*The Board Members believe that enough evidence was presented to suggest that Grace Simms participated in the physical altercation by preventing the escape of Sarah Ismail during the more direct physical assault by Erica Marbury. Moreover, it did not appear that their purpose of initially entering the study room without knocking was to study with Sarah Ismail.*

40.     This conclusion by the hearing Board was not supported by evidence and testimony because no evidence controverted the testimony of Miss Simms stating she never touched Ismail during the altercation between Ismail and Marbury. In fact, Miss Simms testified that she repeatedly pleaded with both girls to stop fighting.

41.     Additionally, the Board concluded that Miss Simms prevented an escape by Ismail, but there was no evidence in the record of the hearing for the Board to make that determination.

42.     The decision of the Hearing Board was not rationally based on the evidence presented to them and resulted in an arbitrary conclusion that denied Miss Simms a right to continue the pursuit of her undergraduate degree.

43.     Consistent with Miss Simms' versions of the events, her criminal charges were withdrawn on July 12, 2016, which is further evidence that she did not engage in any physical contact with Ismail.

44.     Throughout these events Miss Simms was the victim of ongoing harassment and cyberbullying. However, when she attempted to convey her story to University officials, her concerns fell on deaf ears. As a result, Miss Simms suffered a deprivation of the right to continue her pursuant of an undergraduate degree at the University because of the systematic failure of the policies and procedures. As a result, Miss Simms was denied her right to due process as she was forced to testify in front of the University Conduct Hearing Board without the active assistance of counsel, which implicated her Fifth Amendment rights.

## V.     CLAIMS

### COUNT I – DUE PROCESS VIOLATION UNDER THE 14TH AMENDMENT

*Plaintiff v. Pennsylvania State University – Altoona*

45.     Miss Simms hereby incorporates the above paragraphs of this Complaint as if fully set forth herein.

46.     42 U.S.C. § 1983 provides that:

> Every person, who under color of any statute, ordinance, regulation, custom or usage of any state or territory or the District of Columbia subjects or causes to be subjected any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges or

immunities secured by the constitution and law shall be liable to the party injured in an action at law, suit in equity, or other appropriate proceeding for redress…

47.     Miss Simms is a citizen of the United States and the Defendant in this count are persons as pursuant to 42 U.S.C. § 1983 and acted under color of state law.

48.     As pursuant to the 14th Amendment of the United States Constitution, the University is obligated to provide procedural due process to its students when implementing disciplinary decisions.

49.     As a tuition paying student at the University, Miss Simms had a property interest in maintaining her enrollment in pursuit of her undergraduate education. Additionally, Miss Simms has a liberty interest in maintaining her good reputation.

50.     In an attempt to satisfy its constitutional obligations, the University has adopted a Code of Conduct and Student Conduct Procedures.

51     Subsequently with the University's disciplinary process, Miss Simms was facing prosecution for criminal charges arising out of the same alleged events. By forcing her to decide whether to testify at the hearing, the University implicated her Fifth Amendment rights to be free from self-incrimination because any testimony that she provided could be used against her in her corresponding criminal proceeding.

52.     By denying her the opportunity to allow her attorney to actively participate in the Conduct Board hearing, the University denied Miss Simms of appropriate due process because she was forced to participate in the Hearing without being able to protect her constitutional rights. Miss Simms did not fully understand the dynamics of presenting an adequate defense while simultaneously attempting to avoid incriminating herself. An adequate remedy would have been to allow her attorney to actively participate in the hearing.

53.     As a result of the due process violations, Miss Simms suffered financial damages in the form of lost tuition. Additionally, she suffered harm to her reputation because the Conduct Hearing Board rendered a decision that was irrational and arbitrary because it was inconsistent with the evidence presented to them.

WHEREFORE, Plaintiff demands judgement in her favor and against Defendants (at this count) in an amount in excess of $75,000, plus interest, costs of suit, reasonable attorneys' fees, punitive damages, and any other relief to which she is entitled and that this Court deems just and proper.

## COUNT II – SUBSTANTIVE DUE PROCESS VIOLATION

*Plaintiff v. Pennsylvania State University – Altoona*

54.     Miss Simms hereby incorporates the above paragraphs of this Complaint as if fully set forth herein.

55.     42 U.S.C. § 1983 provides that:

> Every person, who under color of any statute, ordinance, regulation, custom or usage of any state or territory or the District of Columbia subjects or causes to be subjected any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges or immunities secured by the constitution and law shall be liable to the party injured in an action at law, suit in equity, or other appropriate proceeding for redress…

56.     Miss Simms is a citizen of the United States and the Defendant in this count are persons as pursuant to 42 U.S.C. § 1983 and acted under color of state law.

57.     The 14th Amendment of the United States Constitution protects individuals from the deprivation of fundamental property rights through arbitrary and irrational decision making by state actors.

58.     Miss Simms had a fundamental property interest in maintaining her status as a student in pursuit of her undergraduate degree as she provided the University with her tuition. Additionally, Miss Simms had a liberty interest in maintaining her sound reputation.

59.     The University was required to protect Miss Simms' property interest by not rendering disciplinary decisions on an arbitrary or irrational basis.

60.     Since the Hearing Board's decision was wholly inconsistent with the evidence presented to them, the Board acted irrationally and arbitrarily when they voted unanimously to suspend Miss Simms for one year. This conduct by the University violated Miss Simms substantive due process rights because he stripped her of her right to pursue her undergraduate education and ultimately her degree and tarnished her reputation.

61.     As a result of the University's violation of Miss Simms' substantive due process rights, she suffered financial damages in the form of lost tuition, and damage to her reputation.

WHEREFORE, Plaintiff demands judgement in her favor and against Defendants (at this count) in an amount in excess of $75,000, plus interest, costs of suit, reasonable attorneys' fees, punitive damages, and any other relief to which she is entitled and that this Court deems just and proper.

## COUNT III –UNLAWFUL DISCRIMINATION – RACE/COLOR
### (Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000d *et seq.*)

*Plaintiff v. Pennsylvania State University – Altoona*

62.     Miss Simms hereby incorporates the above paragraphs of this Complaint as if fully set forth herein.

63.     Title VI, 42 U.S.C. § 2000d *et seq.*, prohibits discrimination on the basis of race, and color in programs and activities receiving federal financial assistance.

64.     The University is a recipient of federal financial assistance.

65.     Miss. Simms is a member of a protected minority class.

66.     The acts and omissions of the University through their Conduct Board, which include acts and omissions of the University's agents and employee's violated Miss Simms' rights under Title VII by discriminating against her on the basis of race and color.

67.     Upon information and belief, the University treated Miss Simms differently based on her race than similarly situated students who were not members of the protected class. The Conduct board with regard to Miss Simms made an unequitable disciplinary decision on the basis of Miss Simms' race and color.

68.     Upon information and belief, the University disparately treats black students – treating them more harshly – than white students.

69.     The University's violations of Title VI were that actual, direct, and proximate cause of the adverse actions suffered by Miss Simms as alleged.

WHEREFORE, Plaintiff demands judgement in her favor and against Defendants (at this count) in an amount in excess of $75,000, plus interest, costs of suit, reasonable attorneys' fees, punitive damages, and any other relief to which she is entitled and that this Court deems just and proper.

## COUNT IV – UNLAWFUL DISCRIMINATION
### (Violation of 42 U.S.C. § 1981)

*Plaintiff v. Pennsylvania State University – Altoona*

70.     Miss Simms hereby incorporates the above paragraphs of this Complaint as if fully set forth herein.

71.     42 U.S.C. § 1981, as amended by Section 101 of the Civil Rights Act of 1981, ensures the fundamental right to contract and to full and equal benefit of all laws. Section 1981 states:

"All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws, proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains penalties, taxes, licenses, and exactions of every kind, and to no other."

72.     A contractual relationship existed between Miss Simms and the University.

73.     The acts and omissions of the University, which included acts and omissions of the University's agents and employees, violated Miss Simms' rights and interfered with the enforcement and enjoyment of all benefits, privileges, terms and conditions of the contractual relationship by discriminating against her on the basis of race and color.

74.     The Conduct Board made an unequitable disciplinary decision on the basis of Miss Simms' race and color.

75.     The University's violations of 42 U.S.C. § 1981 were the actual, direct, and proximate cause of injuries suffered by Miss Simms as alleged.

WHEREFORE, Plaintiff demands judgement in her favor and against Defendants (at this count) in an amount in excess of $75,000, plus interest, costs of suit, reasonable attorneys' fees, punitive damages, and any other relief to which she is entitled and that this Court deems just and proper.

## COUNT V – BREACH OF CONTRACT
**(Inadequate Evidence to Support Finding of Responsibility)**

*Plaintiff v. Pennsylvania State University – Altoona*

76.     Miss Simms hereby incorporates the above paragraphs of this Complaint as if fully set forth herein.

77.     The Pennsylvania State University is operated by a Board of Trustees that that is not governmental in nature. The Board is composed of thirty-two (32) members and only ten (10)

of those positions are public officials. Six of those ten members are appointed by the Governor, and the remaining four seats are filled by the Governor, Secretary of Education, Secretary of Agriculture, and Secretary of Environmental Resources. Thus, the majority of the Board is in control of individuals with no governmental interest.

78.    The University violated the terms of its contract with Miss Simms as set forth in the Code of Conduct and Student Conduct Procedures, which was a fundamental part of the agreement that Miss Simms and the University entered into when Miss Simms enrolled in the University and in participating in the hearing process.

79.    The University breached the terms of the Policy when they viewed the evidence on record as part of the Conduct Board Hearing and rendered their decision to suspend Miss Simms. As part of the Student Conduct Procedures, the Hearing Board is required to enter a decision as to whether Miss Simms violated relevant sections of the Code of Conduct on the basis of the preponderance of the evidence standard.

80.    The evidence presented to them overwhelmingly suggests that Miss Simms did not engage in conduct of which she was charged. The Hearing Board's decision which was inconsistent with the evidence presented to them was irrational, arbitrary and a complete deviation from the Student Conduct Procedures. Therefore, such decision was in breach of the contract entered into by the University and Miss Simms.

81.    As a result of the University's failure to follow the procedural requirements of the Code of Conduct and Student Conduct Procedures, Miss Simms was improperly found to have violated the Code of Conduct and suffered damages to her reputation as well as lost tuition because of her suspension.

WHEREFORE, Plaintiff demands judgement in her favor and against Defendants (at this count) in an amount in excess of $75,000, plus interest, costs of suit, reasonable attorneys' fees, punitive damages, and any other relief to which she is entitled and that this Court deems just and proper.

## VI.    <u>PRAYER FOR RELIEF</u>

WHEREFORE, Plaintiff respectfully prays that this Honorable Court grant the following relief:

a.    Issue a permanent junction:

(i).    Requiring defendants to abolish reprisal

(ii).   Requiring removal or demotion of all employees who have violated the law and failed to meet their legal responsibility to act in accordance with the Code of Conduct and Student Conduct Procedures;

b.    Issue an order requiring Defendants to retroactively restore Plaintiff to her previous condition, by, among other things, requiring them to issue a public apology;

c.    For such damages as Plaintiff is entitled to under the Civil Rights Act and the Rehabilitation Act;

d.    For other and further damages as may be proven at trial.

e.    For an order commanding Defendants and each of them to cease and desist from any practice which retaliates against Plaintiff because she complained about wrongdoing;

f.    For an award of costs of suit including reasonable attorney's fees, including fees under 29 U.S.C. § 216(b); and for such other and further relief as the Court may consider just and proper;

g.      For a restraining order preventing Defendants from contact with Plaintiff or reprisal against her.

## **DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a jury trial for each claim herein for which she has a right to a jury.

Respectfully submitted,

*/s/ Steven M. Toprani*
Steven M. Toprani, Esq. (PA 93217)
stoprani@law-dmc.com

*/s/ Joseph R. Dalfonso*
Joseph R. Dalfonso, Esq. (PA 311821)
jdalfonso@law-dmc.com

Dodaro, Matta & Cambest, PC.
Southpointe Town Center
1900 Main Street, Suite 207
Canonsburg, PA 15317
Tel. 412-243-1600
Fax 412-243-1643