IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| GRACE G. SIMMS, | ) | Case No. 3:17-cv-201 |
| | ) | |
| | ) | |
| | ) | |
| Plaintiff, | ) | JUDGE KIM R. GIBSON |
| | ) | |
| v. | ) | |
| | ) | |
| PENNSYLVANIA STATE | ) | |
| UNIVERSITY—ALTOONA, DR. L. | ) | |
| JAY BURLINGAME, and DR. | ) | |
| ROBERT L. MATCHOCK, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION

### I.    Introduction

Pending before the Court is the Motion to Dismiss Plaintiff's Complaint, In Part,

filed by Defendant Pennsylvania State University, Altoona ("Penn State Altoona") (ECF

No. 8).[1] The Motion has been fully briefed (*see* ECF Nos. 9, 12) and is ripe for disposition.

For the reasons stated below, the Court will **grant** Penn State Altoona's motion.

### II.    Jurisdiction

The Court has subject matter jurisdiction over Simms' claims under 28 U.S.C. § 1331.

Venue is proper under 28 U.S.C. § 1391(b) because a substantial portion of the events giving

rise to the claims occurred in the Western District of Pennsylvania.

---

[1] Simms originally named Dr. L. Jay Burlingame and Dr. Robert L. Matchock as additional defendants. (*See* ECF No. 1.) However, after Defendants filed their Motion to Dismiss, Simms stipulated to dismiss all claims against Burlingame and Matchock "without prejudice, and subject to leave to amend should discovery reveal facts that they were personally involved in the deprivation of Miss Simms' rights." (ECF No. 12 at 6.) Accordingly, Simms currently asserts claims only against Penn State Altoona.

## III.    Background

### A.    Factual Background[2]

Simms is a student at Penn State, Altoona. (ECF No. 1 at ¶ 8.) Simms is an African American female. (*Id.* at ¶ 12.) Starting in March 2016, Sarah Ismail, a fellow Penn State Altoona student, began a cyberbullying campaign targeted at Simms. (*Id.* at 13.) Specifically, Ismail made threatening messages and posts directed at Simms. (*Id.*)

The evening of March 29, 2016, Ismail banged on Simms' door and recorded a "Snapchat story." (*Id.* at ¶ 14.) For approximately ten minutes, Ismail harassed Simms and bullied her through social media. (*Id.* at ¶ 15.) Ismail's harassment and cyberbullying humiliated Simms and caused her to experience negative thoughts about herself. (*Id.*) This incident was so disturbing that Simms' neighbors came by to check on her wellbeing. (*Id.*) It also caused Simms to contact her parents, who advised her to notify the police if Ismail ever harassed her again. (*Id.* at ¶ 16.)

Later that evening, Simms went to study in the library. (*Id.* at ¶ 17.) When she arrived, a fellow student informed her that Ismail was also in the library. (*Id.*) Simms approached Ismail and stated, "Sarah I would appreciate if you would please delete the videos of me from your Snapchat account and if you have an issue with me I would respectfully try to resolve the issue [sic]." (*Id.* at ¶ 18.) Ismail, who appeared to be intoxicated, responded by yelling and swearing at Simms. (*Id.*)

---

[2] The facts contained in this section are derived from Simms' Complaint (ECF No. 1). The Court accepts these facts as true for the sole purpose of deciding the pending motion to dismiss.

Ismail's outburst caused Erica Marbury, another student, to try to calm Ismail down. (*Id.* at ¶ 19.) Ismail exclaimed, "What the fuck do you have to do with this?" (*Id.*) Ismail then spit on and attacked Marbury. (*Id.*) Simms then intervened "to prevent them from fighting." (*Id.* at ¶ 20.)

After the altercation ended, Marbury called the police and reported Ismail's attack on her (*Id.*) Simms informed the police about Ismail's conduct leading up to the incident in the library. (*Id.*) The police said they would document Simms' complaint. (*Id.*)

A few days later, Simms received notification that she would face disciplinary and criminal charges. (*Id.* at ¶ 21.) Penn State Altoona investigated the incident pursuant to the Code of Conduct and Student Conduct Procedures. (*Id.* at ¶ 22.) During the investigation, Simms and Marbury told the police that Simms did not act as the aggressor, that Ismail provoked the incident when she spat on Marbury, and that Ismail had harassed Simms prior to the library incident. (*Id.*)

On April 7, 2017, Penn State Altoona police charged Simms with three criminal counts: "simple assault" (a grade-two misdemeanor), "conspiracy—disorderly conduct" (a grade-three misdemeanor), and "harassment" (a summary offense). (*Id.* at ¶ 25.) These charges subjected Simms to possible imprisonment. (*Id.*)

Simultaneously, the Penn State Altoona Office of Student Conduct charged Simms with two "major level violations" of the Student Conduct Policy: "harming or attempting to harm self of [sic] another" and "harassment—other." (*Id.* at ¶ 26.)

The Office of Student Conduct notified Simms that she was required to attend a University Conduct Board hearing on May 19, 2016. (*Id.* at ¶ 27.) The notice informed Simms

3

that she had (1) "the right to be informed in writing of all changes at least five business days" before the hearing and (2) the right to waive this five-day notice provision; (3) "the right to question witnesses" who participate at the hearing in person or by telephone; (4) "the right to review available evidence and documentation" before the hearing; (5) "the right to appeal the hearing decision"; and (6) the right to receive a hearing report after the hearing, "including findings and sanctions." (*Id.*)

The hearing took place as scheduled. (*Id.* at ¶ 28.) The Conduct Board presiding over the hearing consisted of the "the Chancellor and Dean of the campus, two faculty advisors and a student advisor." (*Id.*) Every member of the Conduct Board is a white Caucasian. (*Id.*)

From the beginning of the hearing, the Board had "already made a predetermined decision to suspend" Simmons because she was African American. (*Id.* at ¶ 29.) The Conduct Board treated Simms in a "disrespectful and dismissive manner," which was demonstrated by the members' body language and how they questioned Simms and her witnesses. (*Id.* at ¶ 30.)

In accordance with the University Code of Conduct and Student Policies, Simms was allowed to utilize the assistance of an attorney when preparing for the Conduct Board hearing but her attorney was not permitted to "actively participate in the hearing itself." (*Id.* at ¶ 31.) Because of the ongoing criminal investigation, Simms "faced a troubling decision"; testify at the Conduct Board hearing without the benefit of counsel and risk jeopardizing her criminal case or remain silent and allow the Conduct Board to hear uncontroverted evidence against her. (*Id.* at ¶ 33.)

Ultimately, Simms chose to testify before the Conduct Board. (*Id.* at ¶ 34.) The Conduct Board uses the preponderance of the evidence standard when adjudicating alleged violations of the Student Code of Conduct. (*Id.* at ¶ 36.) According to Simms, the "overwhelming evidence" presented established that Simms was innocent and "no evidence controverted" Simms' testimony that she never touched Ismail during the incident in the library. (*Id.* at ¶¶ 37, 40.) However, the Conduct Board unanimously found that Simms was responsible for the charges against her. (*Id.* at ¶ 37.) As punishment, the Conduct Board suspended Simms through the 2017 Spring Semester, ordered Simms to reimburse Ismail's "out of pocket" expenses, and required Simms to complete counseling prior to rematriculating. (*Id.* at ¶ 38.)

On July 12, 2016, Simms' criminal charges were dropped. (*Id.* at ¶ 43.)

### B. Procedural Background

Simms filed her five-count Complaint before this Court on October 26, 2017. (ECF No. 1.) After the Defendants filed their Motion to Dismiss, Simms stipulated to dismiss all claims against Burlingame and Matchock (ECF No. 12 at 6), her 42 U.S.C. § 1981 claim (Count IV) (*id.* at 9), and her breach of contract claim (Count V) (*id.*).[3]

Accordingly, the following claims remain against Penn State Altoona: procedural due process under the Fourteenth Amendment (Count I); substantive due process under

---

[3] The Court notes that Simms stipulates to dismiss Count IV with prejudice, and Count V and her claims against Burlingame and Matchock without prejudice. (*See* ECF No. 12.)

the Fourteenth Amendment (Count II); and unlawful discrimination—race/color, under Title VI (Count III).[4]

Penn State Altoona filed its Motion to Dismiss on February 1, 2018. (ECF No. 8.) Penn State Altoona moves to dismiss Count I (procedural due process), Count II (substantive due process), and Count III to the extent it asserts a Title VII claim.[5] (*See id.*)

## IV.  Legal Standard

### A.  Motion to Dismiss

A complaint may be dismissed under Federal Rule of Civil Procedure 12(b)(6) for "failure to state a claim upon which relief can be granted." *Connelly v. Lane Const. Corp.,* 809 F.3d 780, 786 (3d Cir. 2016). But detailed pleading is not generally required. *Id.* The Rules demand only "a short and plain statement of the claim showing that the pleader is entitled to relief" to give the defendant fair notice of what the claim is and the grounds upon which it rests. *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555 (2007) (quoting Fed. R. Civ. P. 8(a)(2)).

Under the pleading regime established by *Twombly* and *Iqbal,* a court reviewing the sufficiency of a complaint must take three steps.[6] First, the court must "tak[e] note of the

---

[4] The Court notes that Simms confuses Title VII and Title VI throughout her Complaint. In her response brief, Simms states that she intended to state a Title VI claim and stipulates to dismiss any Title VII claims. (ECF No. 12 at 12.) Accordingly, the Court construes Count III, labeled "Title VII" as actually asserting a Title VI claim.

[5] As noted above, Simms stipulated to dismissing her Title VII claim and clarified that Count III is actually a Title VI claim. Penn State Altoona only moves to dismiss Count III to the extent that it asserts a Title VII claim. (*See* ECF No. 8 at 10, ECF No. 9 at 20.) Accordingly, the Court will not evaluate a 12(b)(6) challenge to Count III.

[6] Although *Iqbal* described the process as a "two-pronged approach," *Iqbal,* 556 U.S. at 679, the Supreme Court noted the elements of the pertinent claim before proceeding with that approach, *id.* at 675-79. Thus, the Third Circuit has described the process as a three-step approach. *See Connelly,* 809

6

elements [the] plaintiff must plead to state a claim." *Ashcroft v. Iqbal,* 556 U.S. 662, 675 (2009).

Second, the court should identify allegations that, "because they are no more than

conclusions, are not entitled to the assumption of truth." *Id.* at 679; *see also Burtch v. Milberg*

*Factors, Inc.,* 662 F.3d 212, 224 (3d Cir. 2011) ("Mere restatements of the elements of a claim

are not entitled to the assumption of truth.") (citation omitted). Finally, "[w]hen there are

well-pleaded factual allegations, [the] court should assume their veracity and then

determine whether they plausibly give rise to an entitlement to relief." *Iqbal, 556* U.S. at 679.

"A claim has facial plausibility when the plaintiff pleads factual content that allows the

court to draw the reasonable inference that the defendant is liable for the misconduct

alleged." *Id.; see also Connelly,* 809 F.3d at 786. Ultimately, the plausibility determination is

"a context-specific task that requires the reviewing court to draw on its judicial experience

and common sense." *Iqbal,* 556 U.S. at 679.

## V.    Discussion

### A.    The Court Will Dismiss Simms' Procedural Due Process Claim

Penn State Altoona argues that this Court should dismiss Simms' procedural due

process claim because the due process clause does not require that an accused student's

attorney be allowed to actively participate in a student disciplinary hearing. (ECF No. 9 at

14-20.) In response, Simms contends that the due process clause requires that an accused

student's attorney actively participate in a student disciplinary hearing when the student

also faces criminal charges. (ECF No. 12 at 10-12.) Specifically, Simms argues that by not

---

F.3d at 787; *Burtch v. Milberg Factors, Inc.,* 662 F.3d 212, 221 n.4 (3d Cir. 2011) (citing *Santiago v. Warminster Township,* 629 F.3d 121, 130 (3d Cir. 2010)).

permitting her attorney to actively participate in her Conduct Board hearing, Penn State Altoona placed Simms in a "precarious position" which implicated her Fifth Amendment rights; Simms had to choose between testifying at the hearing—and run the risk that her testimony could be used against her in her criminal proceeding—and remaining silent, which would have prevented her from presenting a defense and likely resulted in her being found guilty of the disciplinary charges. (*Id.* at 11.)

### 1. Simms Had a Property Interest in Continuing Her College Education

"The [F]ourteenth [A]mendment prohibits state deprivations of life, liberty, or property without due process of law." *Robb v. City of Philadelphia*, 733 F.2d 286, 292 (3d Cir. 1984). As the Third Circuit has repeatedly noted, "the core of procedural due process jurisprudence is the right to advance notice . . . and to a meaningful opportunity to be heard." *Mir v. Behnke*, 680 Fed. Appx. 126, 129-30 (3d Cir. 2017) (citing *Abbott v. Latshaw*, 164 F.3d 141, 146 (3d Cir. 1998)). The Third Circuit has explained that "[i]t is elementary that procedural due process is implicated only where someone has claimed that there has been a taking or deprivation of a legally protected liberty or property interest." *Abbott*, 164 F.3d at 146 (citing *Board of Regents v. Roth*, 408 U.S. 564, 569 (1972)).

Courts in the Third Circuit have held that undergraduate and graduate students have a legally protected property interest in continuing their educations. *See Osei v. Temple Univ. of Commonwealth Sys. of Higher Educ.*, No. CIV.A. 10-2042, 2011 WL 4549609, at *7 (E.D. Pa. Sept. 30, 2011) (citing *Goss v. Lopez*, 419 U.S. 565, 574 (U.S. 1975)) (stating that "a student's interest in pursuing or continuing an education is included within the Fourteenth

8

Amendment's protection of liberty and property and is therefore entitled to some level of due process."); *Ross v. Pennsylvania State Univ.*, 445 F. Supp. 147, 153 (M.D. Pa. 1978) (holding that the plaintiff "had a property interest in the continuation of his education as a graduate student"); *Coulter v. E. Stroudsburg Univ.*, No. CIV.A.3:10CV0877, 2010 WL 1816632, at *2 (M.D. Pa. May 5, 2010) (stating that the "[p]laintiff likely has a valid property interest" in continuing his college education). Accordingly, the Court finds that Simms' has a legally protected property interest in continuing her education.

Having determined Plaintiff has a valid property interest in continuing her education, the Court must determine what process was due.

### 2. Simms Failed to Plead a Plausible Procedural Due Process Claim

"The Due Process Clause protects students during disciplinary hearings at public institutions." *Phat Van Le v. Univ. of Med. & Dentistry of N.J.*, 379 F. App'x 171, 174 (3d Cir. 2010) (citing *Sill v. Pennsylvania State University*, 462 F.2d 469 (3d Cir. 1972)). "There is not a specific format that these proceedings have to follow, so long as the university provides sufficient protections to comply with due process." *Phat Van Le*, 379 F. App'x at 174 (citing *Sill*, 462 F.2d at 469).

In the Third Circuit, courts evaluating a due process challenge to disciplinary proceedings apply the familiar *Mathews v. Eldridge* factors and weigh "(1) the private interests at stake, (2) the governmental interests at stake, and (3) the fairness and reliability of the existing procedures and the probable value, if any, of additional procedural safeguards." *Palmer v. Merluzzi*, 868 F.2d 90, 95 (3d Cir. 1989) (citing *Mathews v. Eldridge*, 424 U.S. 319 (1976)); *Johnson v. Temple Univ.--of Commonwealth Sys. of Higher Educ.*, No. CIV.A.

12-515, 2013 WL 5298484, at *7 (E.D. Pa. Sept. 19, 2013) (applying *Mathews* factors to disciplinary procedures that resulted in ten-day suspension); *Osei*, 2011 WL 4549609, at *8 (applying *Mathews* factors to disciplinary procedures that resulted in six-month suspension); *Furey v. Temple Univ.*, 884 F. Supp. 2d 223, 247 (E.D. Pa. 2012) (applying *Mathews* factors to disciplinary procedures that resulted in expulsion).

As noted above, Simms alleges that Penn State Altoona violated her procedural due process rights by refusing to allow her attorney to actively participate in Simms' Conduct Board hearing. First, the Court will provide an overview of the case law relevant to Simms' procedural due process claim. Second, the Court will evaluate Simms' procedural due process claim under the three *Mathews* factors. *See Merluzzi*, 868 F.2d at 95; *Johnson* 2013 WL 5298484, at *7; *Osei*, 2011 WL 4549609, at *8; *Furey*, 884 F. Supp. 2d at 247. As explained below, the Court finds that taking Simms' well-pleaded facts as true and drawing all reasonable inferences in her favor, Simms failed to state a plausible procedural due process claim.

### a. The Majority of Courts Have Not Recognized a Right for an Accused Students' Attorney to "Actively Participate" in a Student Disciplinary Hearing

The Third Circuit has not directly faced the question of whether procedural due process gives an accused student the right to have her counsel actively participate in her student disciplinary hearing. However, the majority of district courts in the Third Circuit that have confronted this question have held that no such right exists. *See Osei*, 2011 WL 4549609, at *10 (holding that student's right to due process was not violated when his attorney was not allowed to actively participate in student disciplinary hearing and noting

10

that "[i]n the university disciplinary context, the right to counsel, the right to confront witnesses, and the right to cross-examine witnesses generally have not been deemed necessary elements of due process of law."); *Furey,* 884 F. Supp. 2d at 253 (holding that "active representation by counsel is not required by due process."); *Johnson,* 2013 WL 5298484, at *10 (noting that "[a]ccused students do not have the right to be actively represented by an attorney at a disciplinary hearing.")

To this Court's knowledge, two circuit courts have addressed whether procedural due process requires that a student facing *criminal and disciplinary* charges have the right for her attorney to actively participate in her disciplinary hearing. Both of these courts held that a student has a due process right for her attorney to *attend* the hearing, but have stopped short of articulating a right that would require the attorney to actively participate. *See Gabrilowitz v. Newman,* 582 F.2d 100, 106 (1st Cir. 1978) (holding that due process requires that accused student have ability to be "advise[d]" by attorney at hearing, and noting that "to fulfill these functions, counsel need speak to no one but appellee. Counsel should, however, be available to consult with appellee at all stages of the hearing, especially while appellee is being questioned."); *Osteen v. Henley,* 13 F.3d 221, 225 (7th Cir. 1993) (noting that while "it is at least arguable that the due process clause entitles [accused student] to consult a lawyer, who might for example advise him to plead the Fifth Amendment . . . [the due process clause does not require student] to be represented in the sense of having a lawyer who is permitted to examine or cross-examine witnesses, to submit and object to documents, to address the tribunal, and otherwise to perform the traditional function of a trial lawyer.")

11

One district Court in the Third Circuit held that when a student faces criminal charges in addition to student disciplinary charges, due process requires that a student disciplinary board allow the student's attorney to actively participate in the disciplinary hearing. *See Coulter,* 2010 WL 1816632. But the persuasive value of *Coulter* is much reduced because "[t]o the extent [*Coulter*] required the active participation of counsel, this order was stayed by the Court of Appeals for the Third Circuit." *Furey,* 884 F. Supp. 2d at 253; *see also* The Third Circuit's ORDER in *Coulter,* No. 10-2612 (3d Cir, Sep. 28, 2010) (proclaiming that "[t]he forgoing motion for a stay pending appeal is GRANTED to the limited extent that any interpretation of the District Court's order . . . would require public universities to allow counsel to participate in all disciplinary proceedings . . . ."). Therefore, if presented with the question of whether the procedural due process clause requires that a student's attorney be permitted to actively participate in a student disciplinary hearing when the accused student also faces criminal charges, the Third Circuit would likely answer the question in the negative.

The Court agrees with the *Gabrilowitz* and *Osteen* courts—a college student facing disciplinary violations and concurrent criminal charges has, at most, a due process right for her attorney to accompany her to her hearing in an advisory role. Based on the persuasive precedent cited above, this Court concludes that a student does not have a due process right for her attorney to actively participate in her student disciplinary hearing.

Having determined that the due process clause does not require that an accused student's attorney actively participate in her disciplinary hearing, the Court will next evaluate Simms' procedural due process claims under the *Mathews* factors. As explained

12

below, the Court finds that an analysis under the *Mathews* factors indicates that Simms received sufficient process in her Conduct Board hearing.

### b. An Analysis of the *Mathews* Factors Indicates Penn State Altoona Provided Sufficient Due Process

#### i. Private Interest

Simms' private interest is clearly significant. Simms paid tuition at Penn State Altoona and had an interest in completing her education uninterrupted by suspension or expulsion. *See Osei*, 2011 WL 4549609, at \*12 (noting that the plaintiff had an interest in pursuing his education, which was impaired by his suspension); *Coulter*, 2010 WL 1816632, at \*3 (noting that the plaintiff's private interest was "very serious" because the plaintiff "will not be allowed to finish her semester, thereby setting her academic progress back by half a year, and she will have lost the money she spent in tuition."). Further, Simms faced criminal charges arising out of the same underlying conduct as the charges before the student disciplinary board. *See Furey*, 884 F. Supp. 2d at 247 (observing that the private interest is "even more [significant] when the charges against [the student] are serious enough to constitute criminal behavior.")

Because Simms faced a significant suspension and criminal charges, the Court finds that Simms had a significant private interest in having her attorney participate fully in her Conduct Board hearing.

#### ii. Governmental Interest

Penn State Altoona "has an interest in reducing the fiscal and administrative burdens that a more adversarial litigation system would impose." *Johnson*, 2013 WL

5298484, at *8; *see Osteen*, 13 F.3d at 226 (discussing the significant administrative costs that would be imposed on universities if they were required to have full-scale judicial hearings); *Flaim v. Med. Coll. of Ohio*, 418 F.3d 629, 640–41 (6th Cir. 2005) (noting that "the administrative burdens [of implementing full-scale adversarial hearings] to a university, in the business of education, not judicial administration, are weighty."). Indeed, Penn State Altoona would face greatly increased administrative costs were it required to conduct full-scale adversarial proceedings every time a student was charged with a violation of the Code of Student Conduct.

The Court concludes that Penn State Altoona has a significant governmental interest in resolving student disciplinary actions in an efficient, low-cost, and expeditious manner. The Court finds that given the facts of this case, this significant government interest was served by affording Simms the level of disciplinary process that she received pursuant to the Code of Student Conduct.

### iii.    Fairness and Reliability of the Existing Procedures

The procedures afforded to Simms were considerable. Penn State Altoona notified Simms of the charges against her approximately six weeks prior to her hearing, and told her of her right to review documentation and evidence against her prior to the hearing, the right to question witnesses at the hearing, the right to a written report of the hearing, and the right to appeal the Conduct Board's decision. (ECF No. 1 at ¶ 27.) Furthermore, Penn State Altoona notified Simmis of her right to "be assisted by an attorney in the preparation of defending herself against the Conduct [Board] charges." (*Id.* at ¶ 30.)

14

Notwithstanding Penn State Altoona's policy against allowing attorneys to actively participate in Conduct Board hearings, the University Code of Conduct provides robust protections for accused students like Simms, as outlined above. Notably, Simms was permitted to consult with an attorney in preparing her defense. (*Id.* at ¶ 31.) The Court further notes that Simms does not allege that the hearing involved any complex procedures or that an attorney represented Penn State Altoona at the hearing.

After considering the facts of this case, the Court finds that any additional safeguards provided by allowing Simms' attorney to "actively participate" in her hearing are outweighed by the administrative costs of requiring Penn State Altoona to make its student disciplinary procedures more adversarial, specialized, and bureaucratic.[7]

### iv.    Conduct Board Bias

Simms does not argue that the Conduct Board's bias violated her procedural due process rights. (*See, generally*, ECF No. 12 at 10-12.) However, in her Complaint, Simms alleges that the Conduct Board exhibited bias against her on account of her race. (*See* ECF No. 1 at ¶¶ 28-30.) Procedural due process guarantees the right "to be heard by a fair and impartial tribunal." *Sill*, 462 F.2d at 469; *Furey*, 884 F. Supp. 2d at 255. Accordingly, the Court will address the Conduct Board's alleged bias *sua sponte*.

Simms' allegations of bias fail to give rise to a plausible procedural due process violation. "There is a presumption of fairness in administrative proceedings which favors administrators and 'alleged prejudice of university hearing bodies must be based on more

---

[7] See *Furey*, 884 F. Supp. 2d at 252 (finding that "any additional safeguard provided by allowing counsel to actively represent the student would be outweighed by the adversarial element and legal expertise required on the part of the school to implement this procedure.").

than mere speculation and tenuous inferences.'" *Osei*, 2011 WL 4549609, at \*11 (citing *Gorman v. Univ. of Rhode Island*, 837 F.2d 7, 15 (1st Cir. 1988)); *Furey*, 884 F. Supp. 2d at 255.

The Court finds that Simms' failed to substantiate her claims of bias. Simms alleges that the Conduct Board "was overly dismissive" of her position "as evidenced by their body language." (ECF No. 1 at ¶ 30.) Simms further asserts that, because she is African-American, the Conduct Board, comprised exclusively of white Caucasians, made a "predetermined decision to suspend her . . . ." (*Id.* at ¶ 28.) But Simms provides no evidence to substantiate her conjectures of prejudice. Therefore, the Court finds that Simms' speculations fail to provide the requisite evidence of bias required to plausibly give rise to a procedural due process claim.

### c.    Conclusion

After reviewing the relevant case law and applying the *Mathews* factors, the Court concludes that Simms did not have a due process right for her attorney to actively participate in her Conduct Board hearing. The Court further finds that Penn State Altoona provided Simms with sufficient procedural due process. Accordingly, the Court will grant Penn State Altoona's Motion to Dismiss Simms' procedural due process claim.

### B.    The Court Will Dismiss Simms' Substantive Due Process Claim

Penn State Altoona next argues that this Court should dismiss Simms' substantive due process claim. Penn State Altoona asserts that the Third Circuit does not recognize a fundamental right to pursue a college education. (ECF No. 9 at 8-10.) In response, Simms claims that the cases cited by Penn State Altoona are inapposite because they involve graduate students rather than undergraduate students and students who were dismissed

16

for lackluster academics rather than for disciplinary reasons. (ECF No. 12 at 7.) Simms further contends that Penn State Altoona exercised its power in an "arbitrary and irrational" manner which, it contends, gives rise to a substantive due process claim.[8] (*Id.* at 8.)

The Fourteenth Amendment provides that no State shall "deprive any person of life, liberty, or property without due process of law." U.S. Const. amend. XIV. "While on its face this constitutional provision speaks to the adequacy of state procedures, the Supreme Court has held that the clause also has a substantive component." *Nicholas v. Pennsylvania State Univ.*, 227 F.3d 133, 139 (3d Cir. 2000) (citing *Planned Parenthood of S.E. Pennsylvania v. Casey*, 505 U.S. 833, 846–47 (1992)).

"The substantive component of the Due Process Clause limits what government may do regardless of the fairness of procedures that it employs." *Steele v. Cicchi*, 855 F.3d 494, 501 (3d Cir. 2017) (quoting *Boyanowski v. Capital Area Intermediate Unit*, 215 F.3d 396, 399 (3d Cir. 2000)). Substantive due process achieves this goal by "guarantee[ing] protect[ion] against government power arbitrarily and oppressively exercised." *Steele*, 855 F.3d at 501.

"In contrast to procedural due process rights, which may be derived from state law, '[s]ubstantive due process rights are founded not upon state law but upon deeply rooted notions of fundamental personal interests derived from the Constitution.'" *Steele*, 55 F.3d at

---

[8] The Court notes that Simms also asserted a substantive due process claim arising from reputational harm Simms' allegedly suffered as a result of her suspension. (ECF No. 1 at ¶ 58.) However, Simms voluntarily dismissed this claim without prejudice. (ECF No. 12 at 6-7.) Accordingly, the Court will not consider Simms' reputational substantive due process claim.

501 (quoting *Nunez v. Pachman*, 578 F.3d 228, 233 (3d Cir. 2009)). Accordingly, "[s]ubstantive due process is a doctrine reserved for egregious official conduct that trenches upon the most fundamental of civil liberties." *Armbruster v. Cavanaugh*, 410 F. App'x 564, 567 (3d Cir. 2011).

The Third Circuit recognizes "two threads" of substantive due process claims. *See Nicholas*, 227 F.3d at 139; *Koorn v. Lacey Twp.*, 78 F. App'x 199, 202 (3d Cir. 2003). "The first thread . . . applies when a plaintiff challenges the validity of a legislative act." *Nicholas*, 227 F.3d at 139. "The second thread . . . protects against certain types of non-legislative state action." *Nicholas*, 227 F.3d at 139. Here, Simms challenges non-legislative state action, namely the actions of Penn State Altoona's Conduct Board.

"To prevail on a non-legislative substantive due process claim, 'a plaintiff must establish as a threshold matter that he has a protected property interest to which the Fourteenth Amendment's due process protection applies.'" *Nicholas*, 227 F.3d at 139–40 (quoting *Woodwind Estates, Ltd. v. Gretkowski*, 205 F.3d 118, 123 (3d Cir. 2000)). The Third Circuit has stated that "not all property interests worthy of procedural due process protection are protected by the concept of substantive due process." *Nicholas*, 227 F.3d at 140 (citing *Reich v. Beharry*, 883 F.2d 239, 243 (3d Cir. 1989)). Instead, "to state a substantive due process claim, 'a plaintiff must have been deprived of a *particular quality* of property interest.'" *Nicholas*, 227 F.3d at 139–40 (emphasis in original) (citing *DeBlasio v. Zoning Bd. of Adjustment*, 53 F.3d 592, 598 (3d Cir. 1995)).

The Third Circuit has "limited non-legislative substantive due process review to cases involving real property ownership." *Nicholas*, 227 F.3d at 141; *Wrench Transportation Sys., Inc. v. Bradley*, 340 F. App'x 812, 816 (3d Cir. 2009) (reaffirming principle articulated in

*Nicholas* that substantive due process protection only extends to real property ownership); *see also Marin v. McClincy*, 15 F. Supp. 3d 602, 614 (W.D. Pa. 2014) (holding that "non-legislative substantive due process review is limited to cases involving a quality of interest analogous to real property ownership.") (internal citations omitted).

The Third Circuit has "strongly suggested that the right to continued graduate education is not protected by substantive due process." *Manning v. Temple Univ.*, 157 F. App'x 509, 514 (3d Cir. 2005) (citing *Mauriello v. Univ. of Medicine and Dentistry of New Jersey*, 781 F.2d 46, 50 (3d Cir. 1986)). Furthermore, a district court in the Third Circuit recently held that payment of tuition and graduate education were not fundamental rights entitled to substantive due process protection. *See Valentine v. Lock Haven Univ. of Pennsylvania of the State Sys. of Higher Educ.*, No. 4:13-CV-00523, 2014 WL 3508257, at *6 (M.D. Pa. July 14, 2014).

Simms failed to state a substantive due process claim. Simms' interest in pursuing her college education differs greatly from the rights which federal courts have found to be fundamental in the Constitutional sense. Simms did not cite a single case establishing that students have a fundamental right to a college education, and this Court is aware of none. Because Simms failed to allege that Penn State Altoona violated a fundamental property interest, the Court will dismiss Simms' substantive due process claim.

## VI. Leave to Amend

"[I]f a complaint is subject to a Rule 12(b)(6) dismissal, a district court must permit a curative amendment unless such an amendment would be inequitable or futile." *CollegeSource, Inc. v. AcademyOne, Inc.*, 597 F. App'x 116, 126 (3d Cir. 2015) (quoting *Phillips v. County of Allegheny*, 515 F.3d 224, 245 (3d Cir. 2008)). Amendment would be futile "if the

amended complaint would not survive a motion to dismiss for failure to state a claim upon which relief could be granted." *Munchak v. Ruckno*, 692 F. App'x 100, 102 (3d Cir. 2017) (internal citations omitted).

The Court finds that leave to amend would not be futile with respect to Simms' procedural due process claim. Simms does not allege that Penn State Altoona barred her attorney from attending her disciplinary hearing; rather, Simms states that Penn State Altoona denied her attorney the ability to "actively participate in the Conduct Board hearing." (ECF No. 1 at ¶ 52.) While the Court holds that the due process clause does not require that Simms' attorney be permitted to actively participate in her Conduct Board hearing, the Court reserves judgment on whether the due process clause requires that her attorney be allowed to attend the hearing given that Simms faced criminal charges arising from the same conduct. Accordingly, the Court will grant Simms leave to amend her Complaint to include an allegation that her attorney was barred from attending the Conduct Board hearing if that is, in fact, what Simms alleges occurred.

The Court finds that leave to amend would be futile with respect to Simms' substantive due process claim because the Third Circuit does not recognize a fundamental right to higher education. Accordingly, the Court will deny Simms leave to amend her substantive due process claim.

As noted above, in her response brief, Simms voluntarily dismissed several of her claims "without prejudice." The Court clarifies that if Plaintiff wishes to assert these claims in the future, the proper vehicle for doing so is by filing an Amended Complaint. *See* Fed. R. Civ. P. 15(1)(2).

## VII. Conclusion

The Court will **grant** Penn State Altoona's Motion to Dismiss the Complaint, In Part

(ECF No. 8). The Court grants Simms leave to amend her procedural due process claim.

An appropriate order follows.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| GRACE G. SIMMS, | ) | Case No. 3:17-cv-201 |
| | ) | |
| | ) | |
| | ) | |
| Plaintiff, | ) | JUDGE KIM R. GIBSON |
| | ) | |
| v. | ) | |
| | ) | |
| PENNSYLVANIA STATE UNIVERSITY— | ) | |
| ALTOONA, DR. L. JAY BURLINGAME, | ) | |
| and DR. ROBERT L. MATCHOCK, | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

### ORDER

NOW, this __19th__ day of March, 2018, upon consideration of Penn State Altoona's Motion to Dismiss Plaintiff's Complaint, In Part (ECF No. 8), and for the reasons set forth in the accompanying Memorandum Opinion, it is **HEREBY ORDERED** that said motion is **GRANTED.**

1. Simms shall have **14 days** from the date of this order to file an Amended Complaint.

2. Because this Order dismisses Count I and Count II, and because Simms stipulated to dismissing Count IV and Count V, the only remaining count is Count III, the Title VI claim for unlawful discrimination.

**BY THE COURT:**

**KIM R. GIBSON**
**UNITED STATES DISTRICT JUDGE**